# COUNTY OF ANDROSCOGGIN.

### INHABITANTS OF AUBURN *versus* INHABITANTS OF HEBRON.

The *insanity* of a person does not prevent his continuous residence in a town for five years, from operating to establish his settlement therein.

If an insane person be removed to a town in which before he had no residence, by the direction of his guardian, to remain for no definite period, and is there supported by his guardian for five successive years, with no intention on the part of the *guardian* to remove him, the settlement of the ward, in that town, will be thereby fixed.

FROM the papers in the case, (the *briefs* of the counsel and the opinion of the Court,*) it appears, that this was an ac-tion to recover of the defendant town for the support of one *Daniel Bates*, an insane pauper, whose legal settlement, the plaintiffs allege, was in Hebron. From the year 1849 to the time this action was brought, the said Bates had been under guardianship.

*Record, Walton & Luce,* for plaintiffs, made the following points : —

1. That an insane person is capable of gaining a settle-

---

* No copy of the case came to the hands of the Reporter.

ment in his own right, by five years residence.  *Augusta* v. *Turner,* 24 Maine, 112 ; *New Vineyard* v. *Harpswell,* 33 Maine, 193.

2. That a residence, established for an indefinite period, the person having no established home any where else, constitutes, for the time being, a legal home, and, if continued for five years, will give a settlement under our pauper laws, however precarious may be the tenure of such a home.    *Wilton* v. *Falmouth,* 15 Maine, 479.

3. That, if an act of the will is necessary to establish a home, the will of the guardian of an insane person is sufficient.    *Holyoke* v. *Haskins,* 5 Pick., 20.

*T. A. D. Fessenden,* for the defendants, argued that this case was distinguishable from the cases cited by the plaintiffs' counsel, and all other cases in this State, where it has been held that a person *non compos mentis* has himself gained a settlement by a residence of five successive years.

In this case, the pauper has been insane, and incapable of the *intention* that is required, in order to acquire a settlement by residing in a town.    " He must be there with an intention to remain, or, at least, without an intention of removal.  *Turner* v. *Buckfield,* 3 Maine, 229.

The case cited by the plaintiffs, *Holyoke* v. *Haskins,* 5 Pick., 20, decides that the guardian of an idiot has the same power over his ward, that the parent has over his child.    He has the custody of his person and may appoint his place of residence. His domicil may be changed by the direction, or with the assent of his guardian, whether express or implied.

It is the intention of the *guardian* of an insane person, combined with his actual residence, that gains a settlement for his ward.

Did *Bates* " reside and have a home" in Hebron, for five continuous years ?   He boarded at Keen's, in that town, for more than five years ; but was it the intention of the guardian when he placed him there, that he should remain that time, or, at least, without an intention of removing him ?   In *Warren*

v. *Thomaston*, 43 Maine, 406, the Court say, " dwelling place and home mean some permanent abode or residence, *with an intention to remain,*" and cite *Turner* v. *Buckfield*, 3 Maine, 229 ; *Jefferson* v. *Whitefield*, 19 Maine, 293.

The guardian paid his ward's board by the week. He testifies " I hired him kept by the week, for no definite length of time. I placed him there until some circumstances took place that I could move him to a better home." It was not, therefore, the intention of the guardian that Hebron should be his permanent home. He did not fix upon that place as the permanent residence of his ward, without an intention of removing him.

The opinion of the Court was drawn up by

KENT, J.—It has been settled in the cases of *Augusta* v. *Turner*, 24 Maine, 112, and *New Vineyard* v. *Harpswell*, 33 Maine, 193, that a person *non compos*, or insane, may acquire a settlement in his own right by five years continuous residence in a town.

It had before been decided that such persons might acquire a settlement by dwelling and having a home in a town at the date of its incorporation, or of the passage of the Act of 1821.

The facts in this case clearly establish the residence of the pauper in Hebron, for more than five successive years, and under circumstances that would fix his settlement, if he had been of sound mind. The cases before cited determine that this fact of insanity will not prevent such residence from operating to establish a settlement.

In this case, it appears that the pauper had a guardian, and it is contended that this fact distinguishes it from those referred to. It is urged that, as a continuing residence, to be operative under the pauper law, must be with an *intention* to remain, or without any present intention to depart, that the guardian's will and intention is substituted for the pauper's, and that he stands wholly in his place and speaks and acts for him.

If this proposition were granted, we think the facts show that the guardian's intention was, that the pauper should take up his residence in Hebron for an indefinite time, and that he did not, during the five years, have any intention that he should depart.   He says he "never had another home in contemplation for him than Keen's; that he hired him kept at Mr. Keen's for no definite length of time."   He also says, that he "placed him there till some circumstances took place, that I could move him to a better home."   There is no evidence that these circumstances did take place, nor that the new home contemplated was in another town, nor that the guardian had any intention to remove him from Hebron during the five years.

The pauper was, therefore, a resident, having his home the requisite number of years, in the defendant town, and had no intention himself, or by guardian, to change it during those years.                    *Defendants defaulted.* —
*Judgment for amount claimed in writ,*
*and interest from date of writ.*

TENNEY, C. J., RICE, APPLETON and DAVIS, JJ., concurred.